Filed 7/10/26  Marriage of Martinez CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ACELINA and STEVEN MARTINEZ. | H053538 (Santa Cruz County Super. Ct. No. 21FL01182) |
| ACELINA MARTINEZ, Appellant, v. STEVEN MARTINEZ, Respondent. | |

In this dissolution of marriage action, appellant Acelina Martinez appeals from the judgment of dissolution following a bench trial to address the division of property and questions of reimbursement, child support, and spousal support.  Acelina[1] asserts that domestic violence dynamics materially shaped the marriage and dissolution proceedings, yet the trial court failed to consider this factor in deciding claims for postseparation reimbursement and credits.

---

[1] For clarity we refer to the parties by their first names as they appear in the briefing.  (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

On appeal, Acelina challenges the trial court's denial of reimbursement for her postseparation payments on community obligations and what she characterizes as imposition of a rental value offset for her occupancy of the marital home, denial of her breach of fiduciary duty claim, and denial of her request for attorney fees. Steven has not filed a respondent's brief. We decide the appeal based on the record, opening brief, and oral argument by Acelina. (Cal. Rules of Court, rule 8.220(a)(2).)

For the reasons set out below, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

Acelina and Steven married in 1997 and separated in 2022. They have three children together. Both parties worked during the marriage. Acelina obtained her physician assistant's license and was the primary earner, while Steven worked as a journeyman clerk and devoted more time to raising the children.

In November 2021, Acelina filed a petition for dissolution of the marriage. In July 2022, Acelina sought a domestic violence restraining order (DVRO) for herself and the children, and the trial court issued a temporary restraining order. The DVRO request sought a move-out order for Steven, as

---

[2] After a comprehensive review of the record, we draw the facts and procedural history from the clerk's transcript on appeal. We observe, for the benefit of appellant's counsel, that the statement of facts in the opening brief does not comply with the applicable rules of court. The rules require that "any reference to a matter in the record [be supported] by a citation to the volume and page number of the record where the matter appears" (Cal. Rules of Court, rule 8.204(a)(1)(C)) and that the opening brief "[p]rovide a summary of the significant facts limited to matters in the record" (*id.*, rule 8.204(a)(2)(C)). Contrary to these provisions, the statement of facts submitted by appellant's counsel largely recites Acelina's arguments reflecting her position on appeal and contains record citations inadequate to substantiate the stated assertions.

2

well as no-contact and stay-away orders. Acelina alleged that Steven subjected her to "extreme verbal and emotional abuse" for most of the marriage and that the abuse had escalated to physical abuse with the filing of the divorce. Acelina described incidents of name calling, physical intimidation, and emotionally abusive and manipulative behavior including whispering threats in her ear at night, following her to work and yelling at her from his car, and accusing her of cheating by claiming their youngest son is not " 'his.' "

In July 2022, after Acelina filed her request for DVRO, Steven filed a response and request for dissolution. Steven also filed a request for DVRO against Acelina. The trial court twice granted continuances related to Acelina's DVRO request, keeping in place the temporary restraining order against Steven.

In August 2022, the parties entered into a temporary "nesting" arrangement in which each parent stayed with the children at the marital home on alternate weeks. Meanwhile, the parties litigated issues in a series of hearings that took place in 2023. The "nesting" arrangement ended in December 2023. Steven moved out of the marital home, and the parties agreed that Acelina would have primary physical custody of the children and live in the marital home, with reasonable visitation for Steven.

In April 2024, Acelina sought a modification of temporary child and spousal support orders. She argued that Steven's move constituted a change in circumstances warranting a reduction in her monthly payments to him, since he had become a noncustodial parent and was spending, on average, less than 20 hours per month with the children. Acelina's modification request also asserted that Steven had not yet provided his actual and

updated income and expense declaration, nor any supporting documents, to the court in support of his request for spousal support.

Acelina also argued, in advance of an August 2024 hearing on her request for DVRO, that Steven's violations of the temporary restraining order (including one incident that resulted in his arrest), litigious conduct in the dissolution proceedings, and attempt to seek his own, retaliatory DVRO against her demonstrated the likelihood of recurrence of future abuse. Following a hearing, the trial court granted the DVRO against Steven, as to Acelina, with an expiration date of July 2027.

After an unsuccessful settlement conference in August 2024, the parties submitted trial briefs, and Acelina submitted additional exhibits and supplemental briefing.

Following a bench trial conducted on three dates in November 2024 and January 2025, the trial court issued an order on February 3, 2025 (February 3 order). The February 3 order addressed the division of real property and personal property (including the marital home, vehicles, furniture and furnishings, hobby equipment, and work-related retirement accounts), child support, spousal support, and claims for reimbursement, breach of fiduciary duties, and sanctions. We review the court's findings in detail in our discussion of the issues on appeal, *post*. The court retained jurisdiction over the question of arrears owed and referred Acelina and Steven to "child custody recommending counseling" (capitalization omitted).

Following the February 3 order, Acelina requested a statement of decision, asking the trial court to provide the factual and legal basis for its rulings on each of the controverted issues at trial. Acelina later filed a request for correction and/or clarification of the court's order. The request identified two primary issues for clarification: reimbursements and "*Epstein*

4

like credits"[3] (italics added) for the mortgage-related expenses paid by Acelina after Steven moved out of the marital home.  Acelina also filed a posttrial review hearing brief on arrears that reiterated her requests for a statement of decision and for correction/clarification of the reimbursement and *Epstein* credit issues in the overall order on spousal support and division of assets.

The trial court did not issue a written statement of decision[4] and entered a judgment of dissolution on June 9, 2025, incorporating its February 3 order (judgment).  In July 2025, the court filed an additional order after hearing that responded to several issues raised by Acelina in her posttrial filings.

Regarding the request for correction/clarification, the trial court appeared to construe the request as a request for reconsideration (Code Civ. Proc., § 1008) and questioned whether it was timely under the statute.  As to reimbursement, the court clarified that its decision to deny the request for reimbursement "included *Epstein* credits and all claims made for reimbursement at trial."  (Italics added.)  It explained there was no material change in the income of either party to warrant a modification of the child support order and rejected Acelina's request for modification.  The court additionally addressed matters not at issue in this appeal including adoption of the child custody recommending counseling and execution of Acelina's qualified domestic relations order.

Acelina timely appealed from the June 9, 2025 judgment.

---

[3] Referring to *In re Marriage of Epstein* (1979) 24 Cal.3d 76 (*Epstein*), superseded by statute on other grounds as stated in *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 914.

[4] The record does not provide an explanation for the trial court's implied denial of Acelina's request for statement of decision.

## II. DISCUSSION

Acelina raises four issues on appeal. She contends the trial court abused its discretion and committed legal error by imposing a "*Watts*-type rental value offset"[5] against her, effectively penalizing her for remaining in the marital residence under the DVRO and court-ordered custody arrangements. (Italics added.) Acelina also challenges the court's denial of what she characterizes as *Epstein*-like reimbursements for postseparation payments on community obligations, especially the mortgage, during the period that Steven moved out of the marital residence. Acelina further contends the court erred in denying her breach of fiduciary duty claim and her request for attorney fees as a sanction.

We address the first two issues together, as they concern the same body of facts and overlapping legal issues concerning credits and reimbursement for community debts paid and costs carried after separation.

*A. General Principles of Appellate Review*

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*), citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

"To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*).) When an appellant asserts a point on appeal " 'but fails to

---

[5] Referring to *In re Marriage of Watts* (1985) 171 Cal.App.3d 366 (*Watts*).

support it with reasoned argument and citations to authority' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862) or fails to support it with appropriate record citations (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887; Cal. Rules of Court, rule 8.204(a)(1)(C)), this court may treat the point as forfeited. We are not required to search the record for error ourselves (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246), and "[w]e are not bound to develop appellants' arguments for them." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

*B. Reimbursement and Rental Offset Claims*

Acelina contends the trial court abused its discretion by imposing a *Watts*-type rental offset against Acelina, the protected spouse, for the time she occupied the marital home. She also contends the court erred by denying *Epstein* reimbursements without addressing the domestic violence context for Acelina having borne postseparation mortgage and other housing expenses that preserved the marital asset and maintained stability for the children.

1. <u>Additional Background</u>

The trial court's order on the issue of credits and reimbursements states: "The court denies petitioner's requests for credits or reimbursements for the following expenses paid from July 2022 to the date of trial: water bill, PG&E bill, children's cell phones, AAA car insurance, mortgage payments, tuition payments, gardener payments, health insurance payments, and medical expenses. The court exercises its discretion over these expenses as petitioner paid for half of the mortgage payment during this time and the court is waiving any rental value that would be owed to the community by the petitioner for her occupation of the home from July 2022 to the date of trial."

7

The trial court's subsequent order after hearing (following Acelina's request for correction/clarification and other posttrial requests) declined to modify its ruling. It states, "The court advises when it made the decision to deny the request re reimbursements it included *Epstein* credits and all claims made for reimbursement at trial." (Italics added.)

2. Applicable Law and Standard of Review

California law vests trial courts with "broad statutory powers to accomplish a just and equal division of marital property (Fam. Code, §§ 2550, 2553) and [with] 'broad discretion to determine the manner in which community property is awarded in order to accomplish an equal allocation.' " (*In re Marriage of Greaux & Mermin* (2014) 223 Cal.App.4th 1242, 1250 (*Greaux*).) In doing so, the court "may make 'any orders the court considers necessary' to achieve the statutory mandate. (Fam. Code, § 2553.)" (*Ibid.*) Absent questions of statutory interpretation or evidence that the court applied an incorrect legal standard, appellate courts review orders on division of marital property "only for abuse of discretion." (*Ibid.*)

In seeking to effectuate an equal division of community assets and liabilities upon dissolution of the marriage (see *Greaux, supra*, 223 Cal.App.4th at p. 1250), trial courts may order reimbursement under *Epstein* to a spouse for community debts paid postseparation with the spouse's separate property, or may issue credits to the community under *Watts* for a spouse's postseparation use of a community asset.

More specifically, trial courts have broad authority to order reimbursement "for debts paid after separation but before trial." (Fam. Code, § 2626.) In *Epstein*, "our Supreme Court held that a spouse may claim reimbursement for amounts spent after separation on preexisting community obligations." (*In re Marriage of Reilley* (1987) 196 Cal.App.3d 1119, 1122–

8

1123 (*Reilley*).) A party must make an affirmative showing of the right to reimbursement which "is not automatic, but involves the consideration of [] a variety of factors." (*In re Marriage of Feldner* (1995) 40 Cal.App.4th 617, 625; see *Reilley*, at p. 1124.) Thus, a spouse's expenditure of separate property after separation to meet community obligations—such as a mortgage payment—is generally entitled to reimbursement out of the community property. (*Epstein, supra*, 24 Cal.3d at pp. 80, 84.) However, " '[r]eimbursement should not be ordered if payment was made under circumstances in which it would have been unreasonable to expect reimbursement.' " (*Id.* at p. 84.) One such circumstance is " 'where the payment was made on account of a debt for the acquisition or preservation of an asset the paying spouse was using and the amount paid was not substantially in excess of the value of the use.' " (*Id.* at pp. 84–85.)

The latter situation may be addressed by *Watts* charges. When a spouse postseparation has exclusive use of a community asset, like the family residence, the community may seek reimbursement from the spouse for the reasonable value of that use. (*Watts, supra*, 171 Cal.App.3d at p. 374; *In re Marriage of Garcia* (1990) 224 Cal.App.3d 885, 890 (*Garcia*).) "*Watts* charges equitably compensate the community for one spouse's use of a community-owned home." (*In re Marriage of Mohler* (2020) 47 Cal.App.5th 788, 790–791.) " '[R]eimbursement will usually not be ordered for payments on obligations on the family home made by the spouse remaining in the home.' " (*Garcia*, at p. 891; see *In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1271 [explaining that reimbursement should not be ordered for one spouse's use of a community asset between separation and trial, "unless the amount of the debt payment greatly exceeds the value of the use of the asset"].)

3. <u>Analysis</u>

Acelina states that the trial court erred in its application of the reimbursement and credit/offset principles.  However, Acelina's appellate briefing misstates the court's order and fails to cite pertinent facts in the record (citing in several instances to her own briefing in the trial court proceedings, rather than factual findings made by the court).  For example, Acelina asserts that *Watts* credit exists to ensure that one spouse does not obtain a postseparation windfall by exclusively occupying a community asset (i.e., the marital home) without fair compensation to the community.  Further, she contends the court imposed a rental offset even though Acelina's occupation of the home was not exclusive (but rather a "nesting" arrangement of alternating weeks) for a significant period from separation to trial, and moreover was a result (at least in part) of Steven's domestic violence.

Acelina's record citations fail to support these assertions.  Acelina states that the trial court ordered the nesting arrangement in the context of the DVRO proceeding, demonstrating the "order defines occupancy as a child-stability mechanism," as opposed to the prototypical *Watts* situation where "one spouse voluntarily appropriat[es] a community asset for personal benefit."  Although Acelina cites to the record and quotes from the purported order, the citation is not to the court's order; rather, it is to Steven's request for DVRO, filed in August 2022, and identifiable by its header stating, "Visitation is requested as follows."  Thus, Acelina's contention that "[t]he court's own custody/visitation order recognized that stability" created by

nesting "and required that arrangement" is unsupported by her record citations.[6]

In another example, to support her assertion that the trial court imposed a *Watts*-type rental offset that punished her as the protected spouse, Acelina cites a "March 2025 'Clarification and Correction' " in which she maintains the "court announced a rental-value accounting scheme" and quotes from the purported order. But the order and quoted material do not appear to exist in the record, and the record citation is to Acelina's own summary of her March 2025 *request* for order for correction and/or clarification of the court's order, as set forth in her April 2025 posttrial hearing brief on arrears. Because we are unable to identify the source of the quoted material that Acelina cites, she has failed to meet her burden on appeal to support her argument with meaningful legal analysis and citations to legal authority and facts in the record that substantiate her claims. (See *S.C.*, *supra*, 138 Cal.App.4th at p. 408.) She has therefore forfeited any claim of error on appeal.

For her *Epstein* claim, Acelina contends the trial court's ruling is "internally inconsistent" (underscoring omitted) with the alleged imposition of a rental-value offset, resulting in an inequitable windfall to Steven when "Acelina alone carried the mortgage and housing cost burden." These arguments are again untethered to any verifiable record references. Acelina purports to quote from the court's order as stating, " 'Respondent waives any

---

[6] Our independent review of the record confirms that the trial court's temporary restraining order filed on August 2, 2022, did order a nesting arrangement "so that the children can remain in the marital residence." However, that is not the record citation provided in Acelina's opening brief. Moreover, Acelina's contention that the court's order recognized the stability offered by a nesting arrangement fails to provide any coherent support for her assertion that the court misapplied *Watts*.

right to Epstein credits.' " This language does not appear in the record. Instead, the court's order denied Acelina reimbursement for mortgage and other household expenses, finding that she had "paid for half of the mortgage payment during this time" and "waiving any rental value that would be owed to the community by [Acelina] for her occupation of the home" for the period after separation to trial. Acelina's argument misconstrues the court's order.

Even if we overlook these shortcomings and set aside any misquoted references to the trial court's order, we conclude Acelina fails to demonstrate reversible error on the question of credits and reimbursements. Acelina implicitly takes issue with the court's factual finding that she paid "half" of the mortgage payment by asserting that she paid "virtually the entire marital standard of living," including during the "nesting" arrangement in which she "continued paying nearly all household expenses." Although Acelina provides record support for her asserted expenditures—citing to her income and expense declarations and other documentation submitted to the trial court—and asserts that the record shows Steven was dishonest in his financial disclosures and about his alleged contributions, she does not specifically challenge this aspect of the court's ruling or point to record evidence that contravenes the court's findings.

As for the trial court's application of property division principles, we consider only whether the court abused its discretion in denying Acelina's requests for credit and reimbursement. (*Greaux, supra,* 223 Cal.App.4th at p. 1250.) It was Acelina's burden to establish entitlement to reimbursement in the trial court, given the many factors relevant to the court's exercise of discretion in attempting to accomplish a just and equal property division. (See *ibid.; Reilley, supra,* 196 Cal.App.3d at p. 1124.) By finding that Acelina paid for half of the mortgage and "waiving any rental value that would be

12

owed to the community" for her occupation of the marital home from July 2022, to the trial, the court recognized Acelina's mortgage payments on the marital property and declined to charge her (by requiring reimbursement to the community) for her occupation of the home after Steven moved out.

Acelina disagrees with the trial court's assessment. While she asserts that her payment of mortgage and home carrying costs to preserve the community asset required reimbursement under *Epstein*, nothing in the court's ruling contravenes the applicable legal principles. On the contrary, it appears the court sought to achieve an equitable solution by declining to compensate the community for Acelina's use of the home after Steven left. (See *Garcia, supra*, 224 Cal.App.3d at p. 891.) Acelina also cites no legal authority to support her claim that the court's resolution unfairly penalized her for occupying the marital home with the children despite the need to maintain stability given the allegations of domestic violence and issuance of a DVRO against Steven.

In sum, Acelina's arguments regarding *Epstein* reimbursements and what she characterizes as *Watts*-type offsets offer only conclusory assertions of error and fail to demonstrate an abuse of discretion by the trial court. We conclude Acelina has failed to meet her burden on appeal of demonstrating error. (See *Jameson, supra*, 5 Cal.5th at pp. 608–609.)

*C. Breach of Fiduciary Duty Claim*

Acelina contends the trial court committed reversible error in failing to find a breach of fiduciary duty. She complains that the court's "ruling is stated as a conclusion, not the result of legally sufficient analysis" and maintains the judgment must be reversed and the court directed on remand to apply "the correct fiduciary framework" and expressly consider "whether

13

Steven's financial and litigation conduct constituted unfair advantage and breach."

The fiduciary obligations to which Acelina refers are not in dispute. (See *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1475–1476 (*Feldman*) [citing spousal fiduciary obligations set forth in Family Code section 721 and made applicable during dissolution proceedings by Family Code section 1100, subdivision (e)].) " 'Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in [Family Code s]ection 721, until such time as the assets and liabilities have been divided by the parties or by a court." (*Feldman*, at pp. 1475–1476.) Among the spouse's duties is a duty of disclosure. (*Id.* at p. 1476; see Fam. Code, §§ 1100, subd. (e), 2110, subd. (c).) A party's failure to comply with any part of the statutory obligations related to a spouse's fiduciary duty of disclosure is sanctionable conduct. (See *Feldman*, at p. 1477; Fam. Code, §§ 2103, 2107, subd. (c).)

Nevertheless, as with the reimbursement and offset claims, Acelina fails to carry her burden on appeal of demonstrating that the trial court committed reversible error. (*Jameson, supra*, 5 Cal.5th at pp. 608–609.) She quotes the court's order as stating that the court " 'does not find [r]espondent in breach of fiduciary duty.' " But neither the record citation nor the quoted statement is accurate. Instead, the court's order states, "The court denies petitioner's request to find that respondent breach[ed] his fiduciary duties as she did not provide relevant evidence as to this issue."

Acelina does not address the finding that she did not meet her burden of proof at trial by failing to provide relevant evidence with respect to the

14

breach of fiduciary duty claim. This finding dictates the standard of our review. "On appeal from a determination of failure of proof at trial, the question for the reviewing court is ' "whether the evidence compels a finding in favor of the appellant as a matter of law." ' " (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769 (*Almanor*); see also *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466 (*Sonic*).) " '[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether . . . the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic*, at p. 466.)

To prevail on this issue on appeal, Acelina must demonstrate that the evidence presented to the trial court of Steven's alleged breaches of fiduciary duty was uncontradicted and unimpeached, and of such character and weight as to compel a finding in Acelina's favor. (*Sonic*, *supra*, 196 Cal.App.4th at p. 466; *Almanor*, *supra*, 246 Cal.App.4th at p. 769.) She has failed to do so. Acelina asserts that the record "supports a powerful financial-abuse narrative" whereby Acelina paid "virtually" all expenses while Steven "retained his income and attempted to characterize himself as the household's financial provider." She contends that Steven's actions violate the disclosure statutes, which "exist to prevent a spouse from using misrepresentation and concealment to obtain an unfair advantage in support, property, or fee litigation."

In support, Acelina cites Steven's June 2022 income and expense declaration in which he listed his income as approximately $3,400 monthly, average monthly household expenses of approximately $14,000, and the

15

amount of expenses paid by others as "varies." She points out that Steven failed to submit any documentation supporting his financial disclosure. In contrast, her February 2023 income and expense declaration included substantial documentation and reflected that she was carrying substantially all household costs under the nesting arrangement (leaving blank the question about amount of expenses paid by others). Acelina criticizes Steven's disclosure for listing the household expenses as though they were his responsibility and for representing only that the amounts paid by others " 'varies.' " She further asserts (without record citation) that in a subsequent income and expense declaration, Steven represented that no one else paid for household expenses, even though she paid the bulk of expenses and had submitted proof of this fact.

We disregard those assertions and contentions that lack any citation to facts in the record supporting the claim. (*S.C.*, *supra*, 138 Cal.App.4th at p. 408.) As for the material cited by Acelina, it is unclear how Steven's June 2022 financial disclosure—which clearly shows the earning disparity between Acelina and Steven and shows Steven's earnings and liquid assets were insufficient to support the family's financial obligations—supports an inference of financial abuse or concealment in breach of spousal fiduciary duties. Nor does Acelina offer any legal authority in support of her contention that Steven's alleged escalation of domestic violence (i.e., by immediately seeking a retaliatory request for DVRO, or by showing up at the marital home in violation of the restraining order "in a dangerous rage," ultimately resulting in his arrest) constitutes evidence of litigation abuse in violation of his breach of fiduciary duty. Her argument that Steven's filing of a retaliatory request for DVRO is evidence of a breach of fiduciary duty

16

because "filing sworn pleadings premised on false inversion of the parties' finances is an attempt to obtain an unfair advantage" is purely conclusory.

On this record, we decide that Acelina has not shown the evidence at trial compels a finding in her favor as a matter of law (*Almanor*, *supra*, 246 Cal.App.4th at p. 769) and has not met her burden to establish reversible error in the trial court's determination that she did not submit evidence sufficient to prove breach of fiduciary duty.

*D. Attorney Fees as Sanction*

Acelina contends the trial court erred by failing to impose sanctions under Family Code section 271 despite "textbook" applicability based on Steven's litigation conduct, including the retaliatory request for DVRO, unsupported financial disclosures, and litigation conduct that caused delay and increased costs disproportionate to the assets at issue. She argues that the domestic violence context for the dissolution must be considered because Steven's litigation tactics were used as "coercive control" and a means of "weaponizing financial advantage." Acelina asserts that reversal of the judgment and remand is required for the trial court to properly analyze the facts, including domestic violence dynamics, according to the statutory framework.

As noted *ante*, the Family Code establishes strict rules of financial disclosure and litigation conduct during dissolution proceedings and imposes sanctions for noncompliance. (See *Feldman*, *supra*, 153 Cal.App.4th at pp. 1476–1477; Fam. Code, §§ 2103, 2107, subd. (c).) In addition, Family Code section 271 authorizes the imposition of attorney fees as a sanction for conduct that frustrates the statutory policy to promote the settlement of litigation, reduce costs, and encourage cooperation. (*Feldman*, at p. 1494; see Fam. Code, § 271, subd. (a) [stating that the court may base an attorney fees

17

award "on the extent to which any conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys" and defining such an award of attorney fees pursuant to this section "in the nature of a sanction"].) We review an order on sanctions for abuse of discretion. (*Feldman*, at p. 1478.)

In a single sentence ruling in its order, the trial court denied Acelina's request for sanctions in the form of attorney fees pursuant to Family Code section 271.

Acelina contests the trial court's ruling but offers no basis for reversal on appeal of the court's discretionary decision. As with the breach of fiduciary duty claim, Acelina's request for attorney fees required her to establish evidence supporting the relevant factors, including the other party's litigation conduct, corroboration of both parties' income, assets, and liabilities, and evidence that imposition of a sanction would not impose an unreasonable financial burden. (Fam. Code, § 271, subd. (a).) The court's denial of Acelina's request for attorney fees under this provision implies a finding that Acelina did not demonstrate a sanction of attorney fees was warranted, and/or the court determined its imposition would impose an unreasonable financial burden. Acelina offers no evidence to suggest that, in arriving at its decision, the court applied an incorrect legal standard. We therefore presume the court correctly applied the law. (Evid. Code, § 664; *People v. Eubanks* (1996) 14 Cal.4th 580, 598; see *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.)

Furthermore, although Acelina maintains the trial court erred by denying the attorney fees sanction "without the required analysis," she cites no statutory or other legal authority that required the court to articulate the

18

basis for its decision not to impose sanctions under Family Code section 271. In addition, it was Acelina's burden in the trial court to demonstrate the basis for a sanction of attorney fees pursuant to Family Code section 271, and the court implicitly found that burden was not met.  Thus, her burden on appeal is from a determination of failure of proof at trial.  (*Almanor*, *supra*, 246 Cal.App.4th at p. 769.)  As Acelina does not point to any specific evidence which " ' "compels a finding in [her] favor of the appellant as a matter of law" ' " (*ibid*.; *Sonic*, *supra*, 196 Cal.App.4th at p. 466), we conclude she has not shown reversible error.

## III.  DISPOSITION

The judgment of June 9, 2025, is affirmed.  No costs are awarded because Steven did not file a respondent's brief.  (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Danner, J.

WE CONCUR:

_____

Greenwood, P. J.

_____

Bromberg, J.

**H053538**
*Martinez v. Martinez*